UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN D. BRADLEY,<br><br>      Plaintiff,<br>  v.<br><br>CHRISTIAN A. PRESTEEN et al.,<br><br>      Defendants. | CASE NO. 2:20-cv-00767-LK<br><br>ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION |

   This matter comes before the Court on the Report and Recommendation ("R&R") of United States Magistrate Judge Brian A. Tsuchida, which recommends that the Court grant Defendants' motion for summary judgment and dismiss with prejudice Plaintiff Brian D. Bradley's claims against them. Dkt. No. 57 at 1.[1] Bradley, who is represented by counsel, timely objected to the R&R. Dkt. No. 58. Having reviewed the R&R, Bradley's objections, and the balance of the record, the Court adopts in part and modifies in part the R&R as set forth below.[2]

---

[1] Defendant Christian A. Presteen has not answered or otherwise defended in this action. Accordingly, unless otherwise specified, "Defendants" refers to the appearing defendants.

[2] Judge Tsuchida granted Defendants' motion to seal an unredacted version of their summary judgment motion and certain supporting exhibits. Dkt. No. 56; *see* Dkt. Nos. 43–47. Where possible, the Court cites to the unsealed and

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 1

## I. BACKGROUND

### A. Factual Background

Bradley is a prisoner in the Monroe Correctional Complex ("MCC"). Dkt. No. 53 at 2. On the morning of January 9, 2018, Bradley was violently attacked and injured by his cellmate. *See* Dkt. No. 49-1 at 5; Dkt. No. 49-3 at 3; Dkt. No. 49-6 at 2; Dkt. No. 49-7 at 2; Dkt. No. 50 at 3; Dkt. No. 50-3 at 1. As Bradley slept on his lower bunk, his attacker, Defendant Christian A. Presteen, began hitting and stabbing him with a pen in the face and head area and then struck him with a TV. *See* Dkt. No. 49-1 at 5; Dkt. No. 49-5 at 1. Presteen had been transferred to the MCC and assigned to Bradley's cell just two weeks prior to the incident. Dkt. No. 53 at 2. During those two weeks, Bradley did not raise any concerns to MCC staff about Presteen. Dkt. No. 49-1 at 3–4. Bradley testified at deposition that although he and Presteen did not have any issues with each other, Presteen told him that he "asked [the guards] to be moved" because "he wasn't supposed to be housed with anybody," which made Bradley "concerned." *Id.* at 3–4, 6. Following his attack on Bradley, Presteen underwent a same-day assessment with Dr. Susan L. Pierce, an MCC psychologist, and was moved out of Bradley's cell. Dkt. No. 54-1 at 13; Dkt. No. 53 at 2.

In the weeks leading up to the incident, Presteen sent several kites to prison staff. On December 22, 2017, the day after Presteen was transferred from the Coyote Ridge Corrections Center to the Washington Corrections Center, and four days before he was subsequently transferred to the MCC, Dkt. No. 53 at 2, Presteen submitted a mental health request, Dkt. No. 54-1 at 5. He asked to be seen as soon as possible and to "get back on meds" due to problems sleeping and "other issues." *Id.* Dr. Pierce responded to the kite by explaining that the Department of Corrections ("DOC") does not treat insomnia without other mental health problems, and informing

---

redacted versions of these documents.

1  Presteen that he was scheduled for an appointment with her on January 18, 2018. *Id.*; *see* Dkt. No.
2  51 at 2. On January 1, 2018, Presteen asked to be placed on a vegetarian diet and complained that
3  he had "kited everyone and no one will respond or sends [him] in another direction." Dkt. No. 50-
4  2 at 1 (capitalization altered). Defendant Breezan Stouffer, an MCC Classification Counselor,
5  responded to Presteen on January 3, 2018 and advised him that he needed to "kite Chaplain
6  Sherman" but that he could reach back out to her if he "still g[o]t the run around[.]" *Id.*; *see* Dkt.
7  No. 49-2 at 3; Dkt. No. 50 at 1.[3]

   The record also includes a January 1, 2018 kite signed by Presteen and addressed to
"MENTAL HEALTH STOUFFER," stating as follows: "NEED TO BE SEEN SOON! I'VE
SENT SEVERAL KITES TO MEDICAL BECAUSE I'M NOT FEELING WELL CAN YOU
PLEASE GET ME AN APPOINTMENT ASAP! IMPORTANT I SENT SEVERAL KITES AND
I'M BEING IGNORED!" Dkt. No. 49-10 at 1. In addition, a January 8, 2018 kite signed by
Presteen and addressed to "STOUFFER" states: "I'VE BEEN HERE TWO WEEKS AND
SHOULD HAVE 1 CONTAINER OF PROPERTY. HAVE LEGAL WORK IN THERE THAT I
NEED TO COMPLETE CAN YOU PLEASE FIND OUT WHAT[']S GOING ON THANKS."
Dkt. No. 49-11 at 1. And last, there is an unsigned, undated kite in the record that states: "NEED
HELP MENTALLY ILL NO ONE WILL HELP ME. ALL PEOPLE ARE TRYING TO KILL
ME. FUCKING HELP ME PLEASE." Dkt. No. 49-12 at 1. Unlike his other kites, this kite did not
indicate his DOC number or facility/cell number, and it was not addressed to any particular office
or counselor.[4]

---

[3] Separately, the record includes several health services kites sent by Presteen between October 2, 2017 and December 26, 2017, all related to his physical health. *See* Dkt. Nos. 45-13–45-18. As discussed above, between September 29 and November 16, 2017, Presteen was housed at the Washington Corrections Center; between November 16 and December 21, 2017, he was housed at Coyote Ridge Corrections Center; and on December 21, he was transferred back to the Washington Corrections Center before being transferred to the MCC on December 26, 2017. Dkt. No. 53 at 2.

[4] Stouffer theorized at deposition that the undated kite could have ended up in Presteen's file when his cell was packed

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 3

1      As a Classification Counselor at the MCC, Stouffer's duties included determining the proper placement for incarcerated individuals and learning "about their programming needs, such as their reported relationships with substances or any mental health concerns." Dkt. No. 50 at 1–2. Although she did not provide mental health counseling, Stouffer met with Presteen to conduct a classification interview and risk assessment when he transferred to the MCC in December 2017; the interview and assessment did not reveal current issues with mental health or violence. *Id.* at 2; *see* Dkt. No. 46-1. Stouffer testified at deposition that her only other communication with Presteen prior to January 9, 2018 was in response to his kite requesting a vegetarian diet. Dkt. No. 49-2 at 5, 8. She avers that she learned of Presteen's unsigned, undated kite, as well as the January 1, 2018 kite requesting a mental health appointment, during the course of this litigation, Dkt. No. 50 at 2–3; *see* Dkt. Nos. 49-10, 49-12.[5] Stouffer further attests that if the January 1, 2018 kite addressed to her "had been placed in [her] box, [she] would have seen it" and "would have immediately forwarded it to mental health for a referral as well as called Mr. Presteen into [her] office for an immediate meeting." Dkt. No. 50 at 3. On January 9, 2018, she arrived at Bradley's cell shortly after Presteen attacked him, and claims that she was "shocked" by Presteen's conduct and "had no reason to believe that Mr. Presteen posed a danger to Mr. Bradley or anyone else." *Id.*

Before his attack on Bradley, Presteen had 28 other infractions in the DOC system—none for violent offenses—and there is no record of him assaulting or attempting to assault any other inmate. Dkt. No. 53 at 2–3. However, there is an offender profile report for Presteen from a September 1998 diagnostic indicating that, at that time, Presteen had a "very high" risk "for being assaultive and/or otherwise violent." Dkt. No. 54-1 at 9–10. More recently, when he entered the

---

up following the attack on Bradley. Dkt. No. 49-2 at 7–8.

[5] In her declaration, Dr. Pierce explains that "[a]n inmate's medical and mental health records and kites to health services records are not available to their Classification Counselors unless the inmate directly tells them something about it." Dkt. No. 51 at 1, 3–4.

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 4

DOC system in September 2017, Presteen underwent an Intersystem Mental Health Screening which did not flag similar concerns. Dkt. No. 51 at 3; *see* Dkt. No. 47-3. And each time Presteen was transferred to another DOC facility after September 2017, the receiving facility administered an Intrasystem Intake Screening, and no concerns regarding violence were indicated. *See* Dkt. Nos. 45-9–49-11. After arriving at the MCC in December 2017, Presteen completed an Intrasystem Intake Screening, and again, nothing in the screening indicated a risk of violence. Dkt. No. 54-1 at 7. Presteen also had an examination with a nurse practitioner on October 9, 2017, and a classification interview/risk assessment with Stouffer on December 29, where Presteen denied any mental health concerns. Dkt. Nos. 45-12, 46-1.

**B.    Procedural History**

Bradley initiated this action in Snohomish County Superior Court in January 2020, naming Presteen as a defendant along with the DOC, the MCC, MCC Superintendent Michael Obenland, and Stouffer. Dkt. No. 1-3 at 1–2. In his operative pleading, Mr. Bradley seeks monetary relief pursuant to 42 U.S.C. § 1983, alleging that Defendants violated the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I of the Washington State Constitution by causing or failing to prevent his injuries. Dkt. No. 1-2 at 4–5, 10. He also claims that Defendants negligently trained, retained, and supervised their employees or were otherwise negligent. *Id.* at 5–9. Last, Bradley appears to raise an independent cause of action against the DOC, MCC, and Obenland "pursuant to the doctrine of respondeat superior." *Id.* at 9.

Defendants removed the case to federal district court in May 2020 following the filing of Bradley's amended complaint. *See* Dkt. Nos. 1, 1-2. After a lengthy discovery period, Defendants moved for summary judgment on all of Bradley's claims. Dkt. No. 48. On April 4, 2024, Judge Tsuchida issued an R&R recommending that Defendants' motion be granted. Dkt. No. 57 at 1. Specifically, the R&R concluded that Bradley's Section 1983 claim fails as a matter of law because

(1) the Fourth and Fourteenth Amendments do not apply, (2) the DOC, MCC, and Obenland are not proper defendants, and (3) Bradley fails to establish a genuine dispute as to Stouffer's deliberate indifference under the Eighth Amendment. *Id.* at 7–16. Judge Tsuchida also found that Stouffer and Obenland are entitled to qualified immunity because Bradley "has failed to show the existence of a genuine issue of material fact as to any constitutional violation[.]" *Id.* at 21.

The R&R recommends granting summary judgment on Bradley's negligence claims because (1) he "presents no factual evidence . . . that any specific DOC/MCC employee was acting outside the scope of their employment" or "engaged in tortious conduct outside the scope of their employment," and (2) "there is no evidence DOC personnel had prior knowledge of a specific risk to [Bradley]'s safety or that any DOC official had reason to believe [he] would be attacked[.]" *Id.* at 16–20. With respect to Bradley's claim under the Washington State Constitution, Judge Tsuchida noted that Bradley had agreed to voluntarily dismiss that portion of his Section 1983 claim. *Id.* at 7; *see* Dkt. No. 49 at 4.[6] And last, Judge Tsuchida explained that because "[r]espondeat superior is a theory of liability rather than a separate cause of action," this claim should also be dismissed. Dkt. No. 57 at 20.

Bradley timely objected to the R&R. Dkt. No. 58. Rather than raising specific objections, he mainly rehashes his arguments in opposition to Defendants' summary judgment motion. *See generally id.* For example, Bradley maintains that "there are multiple material facts relevant to the question of negligence and liability on the part of the defendants such that it is simply not possible to determine at this stage of the case or by a summary judgment motion." *Id.* at 4. More specifically, he highlights the January 1, 2018 kite addressed to "Mental Health Stouffer" and the

---

[6] In Defendants' motion for summary judgment, they note that Bradley agreed to voluntarily dismiss his § 1983 claim under the Washington state Constitution. Dkt. No. 48 at 8 n.4. Bradley does not contradict this representation in his opposition brief, nor does he address that claim in his opposition to Defendants' motion for summary judgment on all of his Section 1983 claims. Dkt. No. 54 at 3–6.

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 6

undated kite discussed above as "significant probative evidence" raising material factual disputes as to Defendants' deliberate indifference and negligence. *Id.* at 3–8. Defendants responded to Bradley's objections, taking issue with his recycled and non-specific objections, as well as his inclusion of novel lines of argument. *See generally* Dkt. No. 61.

## II. DISCUSSION

### A. Legal Standards

#### 1. Reviewing the R&R

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). As the statute and rule suggest, the Court reviews findings and recommendations "*if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

#### 2. Summary Judgment

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

1  The Court will, however, enter summary judgment "against a party who fails to make a
2  showing sufficient to establish the existence of an element essential to that party's case, and on
3  which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
4  (1986). Once the moving party has carried its burden under Rule 56, "the nonmoving party must
5  come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec.*
6  *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Metaphysical doubt
7  is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89.
8  Furthermore, it is the nonmoving party's job "to identify with reasonable particularity the evidence
9  that precludes summary judgment," and if he elects not to do so, the Court need not "scour the
10 record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.
11 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also Celotex*,
12 477 U.S. at 322.

**B.    Summary Judgment or Dismissal is Warranted on Bradley's Section 1983 Claims**

Defendants moved for summary judgment on Bradley's civil rights claims under Section 1983 for five reasons: (1) the DOC and MCC are not "persons" subject to suit under Section 1983; (2) Obenland and Stouffer should be accorded qualified immunity; (3) Bradley has not shown that a constitutional right was violated; (4) Obenland had no personal involvement in the incident at issue; and (5) no evidence establishes deliberate indifference by Stouffer. The first of these arguments is really a request for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) because Defendants rely purely on the sufficiency of the allegations in the complaint rather than on facts outside the pleadings. *See, e.g.*, *Harvey v. Mid-Century Ins. Co.*, No. 2:23-cv-00873-LK, 2024 WL 2133611, at *5 (W.D. Wash. May 13, 2024). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6)" motion to dismiss. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up). Specifically, under Rule 12(c), "a court must

determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.* (internal quotation marks and citation omitted). Therefore, unlike with motions for summary judgment where the entire evidentiary record is considered, when reviewing motions for judgment on the pleadings, the Court considers only (1) the pleadings, (2) documents incorporated by reference into the complaint, and (3) matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court "accept[s] all factual allegations in the [relevant pleading] as true and construe[s] them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

1. <u>The DOC and MCC Are Not Proper Defendants, and Bradley Fails to Show Obenland's Personal Involvement</u>

To prevail on a claim for relief under Section 1983, a plaintiff must show that (1) he suffered a violation of a right protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In addition, he must show how each individually named Defendant "personally played a role in violating the Constitution." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019); *see also Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011) (explaining that "culpable action, or inaction" must be "directly attributed to" each defendant). A defendant cannot be held liable under Section 1983 solely based on supervisory responsibility or position. *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020). Instead, a supervisor who did not personally participate in the alleged misconduct may be held liable only "based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1207; *see also Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018). Importantly, states, state agencies, and state officials sued in their official capacities are not "persons" within the meaning of Section 1983 and are immune from such suits

under the Eleventh Amendment. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 64–67 (1989); *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022); *Jenkins v. Washington*, 46 F. Supp. 3d 1110, 1115–17 (W.D. Wash. 2014).

Bradley does not specifically object to the R&R's conclusion that his Section 1983 claim against the DOC and MCC fails because they are not proper defendants. *See* Dkt. No. 57 at 9–10; *see also generally* Dkt. No. 58. The Court independently reaches the same conclusion because neither are subject to suit under Section 1983. *See Bennett v. People of State of Cal.*, 406 F.2d 36, 39 (9th Cir. 1969) ("[S]tate agencies such as the California Adult Authority and the California Department of Corrections, which are but arms of the state government, are not 'persons' within the meaning of the Civil Rights Act."); *see also, e.g.*, *Hubbard v. California Dep't of Corr. & Rehab.*, 585 F. App'x 403, 404 (9th Cir. 2014). Accordingly, the Court dismisses with prejudice Bradley's Section 1983 claim as to the DOC and MCC.

Bradley also does not object to the R&R's conclusion that his claim fails as to Obenland because there is no indication that Obenland personally participated in any alleged constitutional violation. *See* Dkt. No. 57 at 11–12; *see also generally* Dkt. No. 58. In light of the dearth of record evidence suggesting that Obenland had any direct involvement whatsoever in Bradley's injuries, the Court adopts the R&R's recommendation here as well. Defendants' motion for summary judgment on Bradley's Section 1983 claims against Obenland is granted.

2. <u>Bradley Fails to Raise a Genuine Dispute of Fact Regarding Stouffer's Deliberate Indifference to His Safety</u>

Bradley's primary objection to the R&R relates to Stouffer's inaction in response to Presteen's kites; he asserts that there is a genuine dispute regarding whether her failure to act amounts to deliberate indifference in violation of Bradley's Eighth Amendment rights. *See* Dkt. No. 58 at 5–7.

It is well established that prison officials are required to take reasonable measures to protect inmates from violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Rather, "a prison official violates an inmate's Eighth Amendment right only if that official is 'deliberately indifferent'—in other words, if the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citing *Farmer*, 511 U.S. at 837, 844–45); *see also Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015). "Even if a prison official *should* have been aware of the risk, if [s]he 'was not, then [she] has not violated the Eighth Amendment, no matter how severe the risk.'" *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016)). "Constructive notice does not suffice to prove the requisite knowledge, but whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Harrington*, 785 F.3d at 1304 (cleaned up). In making this determination, courts first evaluate whether the defendant was aware that there was a substantial risk of serious harm to the plaintiff, and second, whether the defendant responded reasonably to the known substantial risk. *Wilk*, 956 F.3d at 1149.

Here, resolving all inferences Bradley's favor, he fails to raise a material dispute of fact regarding Stouffer's subjective awareness that Presteen presented a substantial risk of serious harm to him. Even assuming that Stouffer received Presteen's January 1, 2018 kite asking to be seen because he was feeling unwell and ignored, Dkt. No. 49-10, and was aware of the undated kite

stating that people were "trying to kill [him]," Bradley does not present evidence or articulate how Stouffer (either directly or circumstantially) could have known that Presteen risked seriously harming Bradley. In his objections to the R&R, Bradley states—without citation to evidence—that "[t]here is no question, looking at the difference in tone and topic of Mr. Presteen's prior kites, that he was experiencing a mental health crisis that needed immediate action in order to protect himself and those around him." Dkt. No. 58 at 6. But Bradley's arguments about the risk Presteen posed to himself and those around him are only speculative without the benefit of hindsight. And, as Defendants point out, any potential indifference shown by Stouffer toward Presteen's mental health does not, by extension, automatically generate a genuine dispute as to her deliberate indifference toward Bradley's safety. *See* Dkt. No. 61 at 5.

Notably, Bradley does not contend that Stouffer knew of the 1998 diagnostic he submitted in opposition to Defendants' motion, or that she had any non-speculative basis for knowing that Presteen posed a serious threat to other inmates. *See generally* Dkt. Nos. 54, 58. Nor does Bradley explain how Stouffer's presumed circumstantial awareness of Presteen's emerging mental health needs can, on their own, lead a reasonable juror to conclude that Stouffer knew Bradley faced a threat of violence. Indeed, after he attacked Bradley, Presteen told Dr. Pierce that he had "lied" on his Intrasystem Intake Screening and answered "no to all questions about mental health history, medications, [and] hospitalization, etc." because "he wasn't feeling badly then." Dkt. No. 54-1 at 13; *see id.* at 7. And Presteen also denied any mental health concerns in his classification interview/risk assessment with Stouffer on December 29 (and in an earlier examination with a nurse practitioner on October 9, 2017). Dkt. No. 45-12 at 1–2 (indicating "none" in a health history checklist that listed, among other things, "mental health/emotional problem"); Dkt. No. 46-1 at 13–14 (denying having any mental health history). Likewise, even if Presteen told Bradley that he had asked a guard to be moved and was not supposed to be housed with anyone—and assuming

Presteen would testify to that effect at trial—there is nothing in the record suggesting that Stouffer knew, or would have known, that fact. Indeed, it is undisputed that Presteen never previously threatened Bradley, and that Bradley never let Stouffer or any other prison official know that he felt Presteen presented a risk to his safety prior to being attacked. Dkt. No. 49-1 at 3.

Accordingly, the Court adopts the R&R's conclusion that Bradley fails to raise a genuine dispute that Stouffer "was aware of facts from which she could reasonably have drawn an inference that Presteen posed a substantial risk of serious harm to [him]." Dkt. No. 57 at 12–16; *see also, e.g.*, *McCullock v. Scharr*, No. 21-55804, 2023 WL 5696064, at *1 (9th Cir. Sept. 5, 2023) (affirming grant of summary judgment on plaintiff's Eighth Amendment claim where "[a]t the time of the inmate's reassignment to [plaintiff]'s cell, there was no material evidence that he posed a substantial risk of serious harm" (cleaned up)).

### 3. Bradley's Other Constitutional Claims Are Without Merit

Finally, Bradley does not object to Judge Tsuchida's recommendation that the Court grant summary judgment on the remainder of his Section 1983 claim with respect to independent violations under the Fourth and Fourteenth Amendments, and the Court notes that Bradley also did not advance such claims in opposition to Defendants' motion. *See* Dkt. No. 57 at 7–8; Dkt. No. 55 at 5; *see also generally* Dkt. Nos. 54, 58. Accordingly, the Court adopts this conclusion as well.[7]

**C.  Summary Judgment or Dismissal is Warranted on Bradley's State Law Claims Against Defendants**

Bradley's state law claims suffer a similar fate. As an initial matter, Bradley does not object to the R&R's recommendation that summary judgment be granted to Defendants on his claim for

---

[7] Because the Court adopts the R&R's finding that there is no genuine issue of material fact as to any constitutional violation, the Court also concludes that Obenland and Stouffer are entitled to qualified immunity on Bradley's Section 1983 claim. *See* Dkt. No. 57 at 21.

negligent training, retention, and supervision. *See* Dkt. No. 57 at 16–18; *see also generally* Dkt. No. 58. Given that Bradley presents no evidence to show that any DOC or MCC employee was unfit at the time of hiring or acted outside the scope of his or her employment, the Court grants summary judgment to Defendants on this claim. *See, e.g.*, *Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 206–08 (Wash. 2018).

The Court also agrees with the R&R's conclusion—to which Bradley does not object—that, "to the extent [he] is alleging respondeat superior as a separate cause of action," it must be dismissed because it is a theory of liability rather than a separate cause of action. Dkt. No. 57 at 20 (citing *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1577 n.28 (9th Cir. 1990)); *see also generally* Dkt. No. 58.

With respect to Bradley's negligence claim, he argues that summary judgment is not appropriate because Defendants breached their duty to protect him from harm "by their failure to address the serious concerns Mr. Presteen posed to Mr. Bradley's safety given the history of concerning kites, request to be moved," and Presteen's apparent need to be housed alone. Dkt. No. 58 at 7. "Washington courts have long recognized a jailer's special relationship with inmates, particularly the duty to ensure health, welfare, and safety." *Gregoire v. City of Oak Harbor*, 244 P.3d 924, 927 (Wash. 2010). As in other contexts, "[t]he elements of negligence are duty, breach, causation, and injury." *Keller v. City of Spokane*, 44 P.3d 845, 848 (Wash. 2002). In order to establish liability for an injury inflicted by another inmate, a plaintiff must prove "knowledge on the part of prison officials that such an injury will be inflicted, or good reason to anticipate such, and then there must be a showing of negligence on the part of these officials in failing to prevent the injury." *Winston v. State/Dep't of Corr.*, 121 P.3d 1201, 1202–03 (Wash. Ct. App. 2005) (citing *Kusah v. McCorkle*, 170 P. 1023, 1025 (Wash. 1918)); *see also Garrott v. Vail*, 549 F. App'x 669 (9th Cir. 2013); *Scott v. King Cnty.*, 22 Wash. App. 2d 1066, 2022 WL 3025796, at *2 (Wash. Ct.

App. 2022). "The prison official is presumed to have performed his duty"; however, "when there is evidence tending to rebut that presumption, the question is one of fact for the jury." *Winston*, 121 P.3d at 1203.

Bradley asserts that "[o]ne of the most vital questions that must be heard at trial in order to properly fact-find is exactly what Ms. Stouffer's responsibility to Mr. Presteen was." Dkt. No. 58 at 4. But as with his deliberate indifference claim, he does not cite to any record evidence delineating how Stouffer's responsibilities toward Presteen corresponded to her responsibilities toward Bradley. Instead, he summarily contends that Stouffer "completely ignored [Presteen's] serious and disturbing cries for help," and this "fail[ure to] perform[] her task of communicating with Mr. Presteen . . . resulted in injury to Mr. Bradley." *Id.* at 7–8; *see also id.* at 5 (arguing that "Stouffer's inaction and failure to do her job duties" approaches "total unconcern for . . . Bradley's welfare in the face of serious risks"). Bradley cites to nothing in the record or elsewhere to establish that Stouffer had a duty "to maintain communication with . . . Mr. Presteen." Dkt. No. 58 at 7. Indeed, he expressly states (again without citing any support in the record or elsewhere) that "Classification Counselors are not given specific guidelines as to how often they need to be in contact with the inmates they are assigned to[.]" Dkt. No. 58 at 4. A party cannot establish a duty through its own *ipse dixit*. And the record evidence reflects that Stouffer's role was to conduct an initial assessment of mental health needs (which she did), but that she did not otherwise have a role to play in inmate mental health care. Dkt. No. 50 at 1–2. Bradley has rebutted none of this evidence. In the absence of a more definitive indication that DOC personnel had good reason to anticipate the incident, the Court adopts the R&R's finding that the evidence fails to establish a genuine dispute regarding "prior knowledge of a specific risk to [Bradley]'s safety or . . . reason to believe [he] would be attacked[.]" Dkt. No. 57 at 20; *see, e.g.*, *Winston*, 121 P.3d at 1203 (summarily dismissing negligence claim where the plaintiff "failed to show that prison officials

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION - 15

had any reason to believe he would be attacked"); *Scott*, 2022 WL 3025796, at *3 ("A case report showing docket entries in mental health court is insufficient to establish any specific mental condition, much less one that would, without more, establish that [defendant] had reason to anticipate that [the assaulting inmate] would harm [plaintiff].").

Thus, the Court grants summary judgment to Defendants on Bradley's state law claims against them. Bradley's "respondeat superior" claim is dismissed with prejudice.

**D.    Bradley is Ordered to Show Cause Why His Claims Against Presteen Should Not Be Dismissed**

As discussed above, Presteen has not appeared or defended in this action. He was deposed during discovery but declined to provide substantive answers to any questions. *See* Dkt. No. 49-13. To the extent Bradley sought to pursue any causes of action against Presteen, the Court orders Bradley to show cause within 14 days of the date of this Order why such claims should not be dismissed for failure to prosecute and because he has failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6), 41(b); LCR 41(b)(1); *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *Fid. Phila. Tr. Co. v. Pioche Mines Consol., Inc.*, 587 F.2d 27, 29 (9th Cir. 1978).

### III.    CONCLUSION

The Court, having reviewed the R&R, Bradley's objections, and the remaining record, hereby finds and ORDERS:

1. Bradley's objections are OVERRULED, Dkt. No. 58, and the Report and Recommendation, Dkt. No. 57, is ADOPTED IN PART and MODIFIED IN PART to address Bradley's claims against Presteen.

2. Defendants' motion for summary judgment, Dkt. No. 48, is GRANTED.

3. Bradley is ORDERED TO SHOW CAUSE within 14 days why his claims against Presteen should not be dismissed.

Dated this 9th day of May, 2025.

*Lauren King*

Lauren King
United States District Judge